# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2184

JUNE TONEY,

*Plaintiff-Appellant,*

v.

L'OREAL USA, INC., THE WELLA
CORPORATION, and WELLA PERSONAL
CARE OF NORTH AMERICA, INC.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 3002—**Ronald A. Guzman**, *Judge.*

———————

ARGUED APRIL 8, 2004[1]—DECIDED MAY 6, 2005

———————


Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* June Toney's photograph was used
to advertise a hair product marketed by Johnson Products
Company. Toney consented to the use of her photograph for

———————

[1] On petition for rehearing filed by the appellant, we vacated our
original opinion issued September 21, 2004, and, as directed, the
parties submitted supplemental briefs.

a limited time, but when a successor company later used the photograph without her permission, Toney filed suit alleging that her right of publicity had been violated. The district court dismissed her claim after finding that it was preempted by federal copyright law. Toney appeals, and we reverse.

## I. Background

In November 1995, June Toney, a model who has appeared in print advertisements, commercials, and runway shows, authorized Johnson Products Company to use her likeness on the packaging of a hair-relaxer product called "Ultra Sheen Supreme" from November 1995 until November 2000. In addition, Toney authorized the use of her likeness in national magazine advertisements for the relaxer from November 1995 until November 1996. Additional uses (e.g., promotion of other products and/or for extended time periods) were contemplated by the agreement, but, as specifically stated in the agreement, the particular terms for any such uses were to be negotiated separately.

In August 2000, L'Oreal USA, Inc., acquired the Ultra Sheen Supreme line of products from Carson Products, which had previously acquired that same product line from Johnson. Subsequently, in December 2000, the Wella Corporation purchased and assumed control of the line and brand from L'Oreal.

In her complaint filed in state court, Toney asserted that L'Oreal, Wella Corporation, and Wella Personal Care of North America, Inc., (collectively, "defendants") used her likeness in connection with the packaging and promotion of the Ultra Sheen Supreme relaxer product beyond the authorized time period. Specifically, she claimed that the defendants thereby violated (1) her right to publicity in her likeness as protected under the Illinois Right of Publicity Act, 765 Ill. Comp. Stat. 1075/1-60 ("IRPA"), and (2) the Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a).

The case was properly removed to federal district court on the basis of federal question jurisdiction. Following the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court found that the IRPA-based claim met the conditions set out in § 301 of the Copyright Act ("Act"), 17 U.S.C. § 301, and was therefore preempted. Toney later voluntarily dismissed her Lanham Act claim with prejudice and the case was closed. She now appeals the district court's preemption determination. For the reasons stated herein, we reverse.

## II.  Analysis

The question we must address is whether Toney's claim, brought under the IRPA, is preempted by the Copyright Act. We review this legal question and the district court's decision to grant the defendants' motion to dismiss *de novo*. *See Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir. 1997).

The IRPA grants an individual the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 Ill. Comp. Stat. 1075/10. Moreover, the IRPA provides that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person . . . ." 765 Ill. Comp. Stat. 1075/30. However, these state law rights are only valid if they do not interfere with federal copyright protections. *See, e.g., Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987) (stating that "when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms.").

### A.  Toney's Claim Has Not Been Waived

Before interpreting the statutes at issue, we will dispose of the defendants' waiver argument. The defendants argue

that Toney has waived any claim that the IRPA protects her "identity," as compared to her likeness fixed in photographic form. They point out that the word "identity" does not appear in her complaint and that "a plaintiff cannot amend [her] complaint by a brief that [she] files in the . . . court of appeals." *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993); s*ee also Bell v. Duperrault*, 367 F.3d 703, 709 n.1 (7th Cir. 2004) (citing *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) ("A party waives any argument that it does not raise before the district court . . . .") (quotation omitted)). In addition to finding problems with the complaint, the defendants point to the fact that in Toney's response to the defendants' motion to dismiss before the district court, she expressly stated that her claim "is narrowly directed to the use of her likeness, captured in photograph or otherwise." (R. 13 at 4.)

Although Toney's complaint could have been more clear, we find that the minimal requirements for notice pleading have been met here. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," as well as a jurisdictional statement and a demand for relief. *Id.* Toney was required only to provide the defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (quotation omitted). Toney's complaint alleges unauthorized commercial use of her likeness by the defendants under the IRPA. The complaint does not explain the legal theory that Toney relies upon, but it was not required to do so. We find that Toney provided the defendants with adequate notice of her claim. The identity claim was not waived.

## B. Toney's Claim Survives Preemption

The IRPA states that a person's "identity" is protected by the statute. Identity is defined to mean "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 Ill. Comp. Stat. 1075/5. In short, the IRPA protects a person's right to publicity. The subject matter of such a claim "is *not* a particular picture or photograph of plaintiff. Rather, what is protected by the right of publicity is the very identity or persona of the plaintiff as a human being." J. Thomas McCarthy, 2 RTS. OF PUBLICITY & PRIVACY § 11:52 (2d ed. 2004) (emphasis in original) (internal citations and quotations omitted). A photograph "is merely one copyrightable 'expression' of the underlying 'work,' which is the plaintiff as a human being. There is only one underlying 'persona' of a person protected by the right of publicity." *Id.* In contrast, "[t]here may be dozens or hundreds of photographs which fix certain moments in that person's life. Copyright in each of these photographs might be separately owned by dozens or hundreds of photographers." *Id.* A persona, defined in this way, "can hardly be said to constitute a 'writing' of an 'author' within the meaning of the copyright clause of the Constitution." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003-04 (9th Cir. 2001) (quotation omitted); *see also Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 623 (6th Cir. 2000); *Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000).[2]

Having reviewed the rights protected by the IRPA, we must now determine whether Toney's claim has been pre-

---

[2] The cases cited here rely on both the common law right of publicity and various state statutes. Although none of the statutes is identical to the Illinois law, they are similar enough to provide guidance for us. The concepts at issue are the same.

empted by federal law. Section 301 of the Copyright Act delineates two conditions which, if met, require the preemption of a state-law claim in favor of the rights and remedies available under federal law. Section 301(a) states:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by section[ ] 102 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). We will take the questions in reverse order, first determining whether the work at issue is fixed in a tangible form and whether it comes within the subject matter of copyright as specified in § 102. Second, we consider whether the right is equivalent to the general copyright protections which are set out in § 106.

Section 102 of the Act defines the subject matter of copyright as "original works of authorship fixed in any tangible medium of expression," including "pictorial" works. 17 U.S.C. § 102(a). The Act's definitional section explains that a work is "fixed" in a tangible medium of expression "when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

The second aspect of the test requires a showing that the right to be enforced is "equivalent" to any of the rights set forth in § 106. The notes and commentary accompanying § 106 make it clear that copyright holders have five exclusive and fundamental rights: reproduction, adaptation, publica-

tion, performance, and display.[3] 17 U.S.C. § 106. A copyright is violated or infringed when, without permission, someone other than the copyright holder exercises one of these fundamental rights. Put differently, to avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law—i.e., conduct other than reproduction, adaptation, publication, performance, and display. *See, e.g., Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659-60 (4th Cir. 1993); 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 1.01[B][1] (1999).

Applying the facts of this case to the requirements for preemption, we find that Toney's identity is not fixed in a

---

[3]  Section 106 states:

> [T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1)  to reproduce the copyrighted work in copies or phonorecords;
>
> (2)  to prepare derivative works based upon the copyrighted work;
>
> (3)  to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6)  in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

tangible medium of expression. There is no "work of authorship" at issue in Toney's right of publicity claim. A person's likeness—her persona—is not authored and it is not fixed. The fact that an image of the person might be fixed in a copyrightable photograph does not change this. From this we must also find that the rights protected by the IRPA are not "equivalent" to any of the exclusive rights within the general scope of copyright that are set forth in § 106. Copyright laws do not reach identity claims such as Toney's. Identity, as we have described it, is an amorphous concept that is not protected by copyright law; thus, the state law protecting it is not preempted.

We also note that the purpose of the IRPA is to allow a person to control the commercial value of his or her identity. Unlike copyright law, "commercial purpose" is an element required by the IRPA. The phrase is defined to mean "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 Ill. Comp. Stat. 1075/5. Clearly the defendants used Toney's likeness without her consent for their commercial advantage. The fact that the photograph itself could be copyrighted, and that defendants owned the copyright to the photograph that was used, is irrelevant to the IRPA claim. The basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question. One can imagine many scenarios where the use of a photograph without consent, in apparent endorsement of any number of products, could cause great harm to the person photographed. The fact that Toney consented to the use of her photograph originally does not change this analysis. The defendants did not have her consent to continue to use the photograph, and therefore, they stripped Toney of her right to control the commercial value of her identity.

*C.  Conflicting Precedent*

Our decision in *Baltimore Orioles v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986), has been widely criticized by our sister circuits and by several commentators. Many interpret the case as holding that the right of publicity as protected by state law is preempted by § 301 in all instances. We take this opportunity to clarify our holding. The case simply does not stand for the proposition that the right of publicity as protected by state law is preempted in all instances by federal copyright law; it does not sweep that broadly.

*Baltimore Orioles* holds that state laws that intrude on the domain of copyright are preempted even if the particular expression is neither copyrighted nor copyrightable. Such a result is essential in order to preserve the extent of the public domain established by copyright law. Therefore, states may not create rights in material that was published more than 75 years ago, even though that material is not subject to federal copyright. Also, states may not create copyright-like protections in materials that are not original enough for federal protection, such as a telephone book with listings in alphabetical order. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). *Baltimore Orioles* itself makes clear that "[a] player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product." 805 F.2d at 666 n.24. Therefore, the bottom line is that Toney's claim under the Illinois right of publicity statute is not preempted by federal copyright law.[4]

---

[4] This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing en banc on the issue of whether federal copyright law preempts the Illinois right of publicity.

### III.  Conclusion

For the reasons stated above, the dismissal of Toney's right of publicity claim is VACATED; this case is REMANDED for further proceedings in the district court.


**A true Copy:**

   **Teste:**


_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***