NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 22, 2013[*]
Decided May 3, 2013

**Before**

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2030

|  |  |
|---|---|
| EDDIE L. ROBINSON, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
|  | Eastern Division. |
|     *v.* |  |
|  | No. 09 C 3844 |
| AARON BANDY, et al., |  |
|     *Defendants-Appellees.* | Matthew F. Kennelly, |
|  | *Judge.* |

**O R D E R**

Defendants Aaron Bandy and Marcus Wietting, police officers in Joliet, Illinois, arrested Eddie Robinson for sexual assault. The officers arrived at the home of Cynthia Clarke, the alleged victim, in response to a 911 call made by Clarke's roommate and arrested Robinson after conducting interviews at the scene. Robinson was held in the Will

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

County jail for more than three months on a $150,000 bond, later reduced to $75,000. Six months after he made bail, county prosecutors dismissed the charge. Robinson then filed this lawsuit in 2009 against the two officers and the City of Joliet, claiming under 42 U.S.C. § 1983 that he was unconstitutionally detained, held on excessive bail, and denied equal protection based on his race. The district court granted summary judgment for the defendants on all counts. We affirm the judgment.

During a discovery deposition, Clarke testified that the night before Robinson's arrest they had attended a party together and consumed large amounts of alcohol. After the party, Robinson drove Clarke home and then asked if he could sleep there. Clarke allowed him to share her bed because her roommate and his friend were occupying the living room. According to Clarke, on the morning of June 26, 2007, she was awakened by her roommate, Darryl Montgomery, who said that Robinson had been penetrating her sexually while she slept. During her deposition Clarke did not recall speaking with police officers at her house, but Robinson does not deny that she was interviewed and gave a statement.

The two defendant officers and a trainee who went along to Clarke's home also were deposed. All of them testified that Montgomery, the roommate, met them outside Clarke's house and told them that he saw Clarke being raped inside the apartment by Robinson. According to Officer Wietting's deposition, Montgomery's friend recounted a similar version of events. The friend stated that he had first entered Clarke's bedroom some time after she and Robinson had gone to bed, and he alerted Montgomery upon observing Robinson having oral sex with Clarke. When the two of them reentered the bedroom, they saw that Robinson had pulled Clarke's clothes up around her neck and was on top of her, naked, penetrating her. They could see that Clarke was asleep and not responding. Montgomery told the officers that he yelled at Robinson to stop, and then left the house to call 911.

The three police witnesses also testified during their depositions that Clarke, while still at her home, insisted that she had been raped and wished to press charges. Officer Bandy described her as "excited," though he admitted that he had previously encountered Clarke during his police duties and suspected that she might have "a mental issue." He also testified that Montgomery's friend described Clarke that morning as "not mentally there." Both Bandy and Officer Wietting testified that Clarke was visibly intoxicated.

About Robinson, the defendant officers agreed that he was "evasive" during his interview and that he changed his story, at first denying any sexual contact with Clarke but later stating that they had watched pornographic videos and engaged in some sexual activity together, including oral sex. At his deposition, Robinson maintained that he and

Clarke had watched pornographic videos together, which Clarke denied in her testimony. Robinson also testified that he recalled little from the morning because of his intoxication.

After interviewing the four occupants of Clarke's home, Officers Bandy and Wietting concluded that probable cause existed to arrest Robinson. Officer Wietting and the trainee took him into custody, while Bandy went with Clarke to the hospital. At the hospital Clarke was examined for injuries or evidence of sexual assault. She did not have any apparent physical injuries, but the results of the sexual assault kit were sent to the police crime laboratory for further analysis. The nurse who aided Clarke that morning testified that she told Bandy that the physical examination had disclosed no sign of injury.

At some point after Clarke left the hospital—the precise time is not disclosed in the record—she went to the police station to retract her statement. According to her deposition, while at the hospital she came to believe that her judgment had been clouded due to the amount of alcohol she had consumed at the party, combined with the fact that she had stopped taking the medicine prescribed for her schizophrenia. After she returned home, Robinson's mother and the host of the party came to her house, and she told them she no longer believed that Robinson had raped her. They drove her to the police station, but she does not remember speaking to anyone there other than the officer at the front desk.

At his initial appearance in court the day after his arrest, Robinson waived a hearing to determine probable cause. On the prosecutor's recommendation, the judge set bond at $150,000. More than three months after the arrest, the crime lab released the results of the sexual assault kit, which was negative for bodily fluids. On Robinson's motion, the judge lowered his bond to $75,000 and released him after his mother posted $7,500. Six months later the case was dismissed.

The defendants moved for summary judgment, asserting that the undisputed evidence establishes that probable cause existed for the arrest. They also argued that Robinson has no evidence linking them to the amount of his bond, or evidence of racial discrimination or a policy of the City of Joliet to discriminate against suspects on the basis of race. In opposing summary judgment, Robinson denied any sexual contact with Clarke and relied primarily on her testimony to undermine the defendants' assertion of probable cause. The defendants did not oppose his statement of additional facts.

The district court concluded that the information the defendant officers possessed at the time of the arrest—particularly Montgomery's and his friend's statements, the existence and content of which Robinson does not dispute—was sufficient to establish probable cause. Part of that information, the court reasoned, is Robinson's shifting story at the scene. The court added that Robinson's focus on Clarke's later retraction and the lack of

corroborating physical evidence could not create a material issue concerning the determination of probable cause made at the time of the arrest. The court ruled that Robinson had no evidence to support his remaining claims.

Following the dismissal Robinson filed a motion captioned under Federal Rule of Civil Procedure 60(b)(6), in which he argued that the defendants effectively had admitted his version of events by not filing a reply to his own opposition to summary judgment. The district court denied this motion.

Robinson's primary argument on appeal is that the district court erred by excusing the defendants from responding to his statement of material facts. He contends that Northern District of Illinois Local Rule 56.1 mandates the filing of a reply where the nonmoving party has filed its own statement of facts, and that not taking that step constituted "extraordinary circumstances" warranting relief under Rule 60(b)(6).

We note initially that Robinson's motion, despite its label, is better characterized as a motion under Federal Rule of Civil Procedure 59(e), because his asserted basis for relief is legal error rather than the kind of extraordinary circumstances required for relief under Rule 60(b)(6). *See Ho v. Taflove*, 648 F.3d 489, 495 n.5 (7th Cir. 2011); *Obriecht v. Raemisch*, 517 F.3d 489, 493–94 (7th Cir. 2008). But ultimately this distinction makes no difference here, because we conclude that the district court correctly denied the motion.

Local Rule 56.1 requires the district court to deem admitted those facts that are not contested in the parties' submissions related to the motion for summary judgment. N.D. Ill. R. 56.1(a); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Because the moving party here did not submit a reply, Robinson's submitted facts were deemed admitted for purposes of defendants' motion for summary judgment under that rule. Contrary to Robinson's assertion, however, a moving party's reply to the nonmoving party's response is optional. N.D. Ill. R. 56.1(a) (stating that moving party "may submit a concise reply"). But even with Robinson's additional facts, summary judgment for the defendants was still appropriate.

Robinson also argues that the district court overlooked a genuine issue of material fact regarding his unlawful-arrest claim. Specifically, he points to the results of the physical examination performed on Clarke at the hospital, which showed no sign of any physical injury, as exculpatory evidence dissipating the initial probable cause for his arrest. But a lack of physical injury does not negate the possibility of an assault, especially in light of the witness statements that Robinson raped Clarke while she was unconscious. The officers were entitled to rely on the statements they received at Clarke's home, which established probable cause for Robinson's arrest even in the absence of physical evidence. *See Abbott v.*

*Sangamon Cnty., Ill.*, 705 F.3d 706, 716 (7th Cir. 2013); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 302 (7th Cir. 2011). Even assuming that after the results of the sexual assault kit were released probable cause no longer existed, that occurred almost four months after Robinson's arrest, well after the officers' responsibility for his custody ended.

Finally, Robinson challenges the district court's award of costs to the defendants and its denial of his motion to file a second amended complaint. But Federal Rule of Civil Procedure 54(d) provides that costs "should be allowed to the prevailing party." Robinson identifies no particular error in the calculation of the costs awarded to the defendants, so we conclude that the district court did not abuse its discretion. *See Harney v. City of Chicago*, 702 F.3d 916, 921, 927 (7th Cir. 2012); *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009). Additionally, Robinson required the court's leave to amend his complaint a second time, *see* FED. R. CIV. P. 15(a)(2); *Stanard v. Nygren*, 658 F.3d 792, 796–97 (7th Cir. 2011), and given that discovery had ended and the motion for summary judgment was pending when Robinson sought leave to appeal, the district court did not err in denying the motion. *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773–75 (7th Cir. 1995).

AFFIRMED.