# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Chicago Board Options Exchange, Inc. v. International Securities Exchange, L.L.C.*,
**2012 IL App (1st) 102228**

| | |
|---|---|
| Appellate Court Caption | CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED, CME GROUP INDEX SERVICES, L.L.C., and THE MCGRAW-HILL COMPANIES, INC., Plaintiffs-Appellees, v. INTERNATIONAL SECURITIES EXCHANGE, L.L.C., and THE OPTIONS CLEARING CORPORATION, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-10-2228, 1-10-2252 cons. |
| Filed | May 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order enjoining defendants from providing an exchange market for the trading of index options tied to the Dow Jones Industrial Average and the S&P 500, which are owned by plaintiffs, was affirmed on appeal, and the appellate court also rejected defendants' contention that plaintiffs' claims were preempted by federal copyright law, since plaintiffs' claims did not fall under the Copyright Act, they were based on defendants' intended unlicensed and unauthorized use of the indexes, that use constituted misappropriation under Illinois law, in the absence of any conflict between the law of Illinois and the law of New York on the issue of misappropriation, Illinois law applied, and plaintiffs were entitled to injunctive relief. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CH-24798; the Hon. William O. Maki, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | William J. Nissen and Jamie E. Haney, both of Sidley Austin LLP, and Andrew L. Deutsch, Kenneth L. Schmetterer, and Steven L. Reynolds, all of DLA Piper LLP (US), both of Chicago, for appellants. |
| | Paul E. Dengel, Stacie R. Hartman, and Ayad P. Jacob, all of Schiff Hardin LLP, and Robert P. LoBue, Adeel A. Mangi, and Elizabeth Shofner, all of Patterson Belknap Webb & Tyler LLP, both of Chicago, and R. Bruce Rich, Benjamin E. Marks, and Mark J. Fiore, all of Weil, Gotshal & Manges LLP, and Alan L. Unikel and Justin K. Beyer, both of Seyfarth Shaw LLP, both of New York, New York, for appellees. |
| | |
| Panel | JUSTICE GARCIA delivered the judgment of the court, with opinion. |
| | Presiding Justice R. Gordon and Justice Lampkin concurred in the judgment and opinion. |

## OPINION

¶ 1     Defendants International Securities Exchange (ISE) and The Options Clearing Corporation (OCC) appeal the circuit court's order enjoining them from providing an exchange market for the trading of index options tethered to the Dow Jones Industrial Average (DJIA) and the S&P 500 Composite Stock Price Index (S&P 500), which are, respectively, owned by plaintiffs CME Group Index Services (CME) and McGraw-Hill Companies. Plaintiff Chicago Board Options Exchange (CBOE) pays CME and McGraw-Hill for exclusive licenses to provide such a market. ISE contends the circuit court erred in declining to find the plaintiffs' state law claims of misappropriation and unfair competition preempted by federal copyright law. We hold the circuit court correctly rejected ISE's contention of preemption because the plaintiffs' claims are not centered on "works of authorship" to trigger copyright protection. Rather, the plaintiffs' claims center on ISE's intended unlicensed, unauthorized use of the research, development, expertise, and goodwill of the indexes for its own gain. Under Illinois law, this constitutes misappropriation as our supreme court ruled in *Board of Trade v. Dow Jones & Co.*, 98 Ill. 2d 109 (1983), which concluded that a commodities exchange's unlicensed use of the DJIA to offer a derivative contract to investors constituted misappropriation. While there is some indication that federal jurisprudence may have shifted from the underpinnings of *Board of Trade*, the case remains the law in Illinois. Thus, we uphold the circuit court's injunction against ISE's unlicensed use of the indexes and OCC's clearing of trades on those indexes. We also reject ISE's conflict of law claim that Illinois law and New York law differ on the issue of misappropriation.

¶ 2                                     BACKGROUND

¶ 3        The DJIA and S&P 500 indexes are widely disseminated to provide investors with a gauge by which to measure the overall activity of the stock market. The indexes generate millions of dollars in licensing revenues by serving as the underlying bases for a wide variety of financial products. The indexes are tabulated through complex calculations involving both objective and subjective factors, including the selection of appropriate securities to evaluate, identification of evaluation criteria, and determination of policies for reflecting mergers, takeovers, spin-offs, and other corporate events affecting the index components.

¶ 4        CBOE is a national securities exchange registered with the Securities and Exchange Commission (SEC) and located in Chicago. It offers index options that trace the DJIA and S&P 500 under its exclusive licenses with CME and McGraw-Hill Companies. An index option gives its holder the right, but not the obligation, to exercise the option and receive the difference between an index level when the index option is opened (the "strike price" or "exercise price") and the index level at the expiration of the option. It is essentially "a bet on the future value of the index." *Dow Jones & Co. v. International Securities Exchange, Inc.*, 451 F.3d 295, 300 n.6 (2d Cir. 2006). Since an index option is based on the overall stock market, it gives the investor the ability to hedge against systemic risk in the market as a whole, something that cannot be accomplished by portfolio diversification.

¶ 5        ISE is also a national securities exchange, with its principal place of business in New York City. It specializes in the trading of options contracts, including index options. ISE has created over two dozen of its own indexes, including three that highly correlate with the S&P 500. ISE requires third parties to obtain licenses to offer financial products based on its indexes, and ISE itself has obtained licenses from third parties to use third parties' indexes as bases for its options products. ISE unsuccessfully requested a license to offer S&P 500 index options in the early and mid 2000s, and it expressed interest in a license for DJIA index options in 2002, but the index providers opted to grant exclusive licenses to CBOE.

¶ 6        OCC is based in Chicago and is the lone clearing agency for index options in the United States. It clears and settles every index option exercised in the country.

¶ 7        On November 2, 2006, ISE announced its intention to offer index options based on the DJIA and S&P 500 without obtaining a license from the providers of those indexes. That same day, ISE filed an action against Dow Jones[1] and McGraw-Hill in the United States District Court for the Southern District of New York, seeking a declaratory judgment that ISE would not infringe on any rights of Dow Jones or McGraw-Hill by listing DJIA and S&P 500 options without a license.

¶ 8        On November 15, 2006, the plaintiffs filed a complaint in the circuit court of Cook County advancing three counts: count I alleged that ISE's proposed use of the indexes would constitute misappropriation under Illinois common law; count II asserted that ISE's actions would tortiously interfere with CBOE's prospective business advantage; and count III alleged that ISE's actions would constitute unfair competition under Illinois common law.

---

[1]Dow Jones is the predecessor in interest to the DJIA, of which CME now owns a majority share.

¶ 9        ISE removed the Illinois action to the United States District Court for the Northern District of Illinois. On February 23, 2007, in accordance with the plaintiffs' motion, Judge Robert W. Gettleman remanded the matter to the circuit court of Cook County. *Chicago Board Options Exchange, Inc. v. International Securities Exchange, LLC*, No. 06 C 6852, 2007 WL 604984 (N.D. Ill. Feb. 23, 2007). In ordering the remand, the court concluded that "[p]laintiffs' claims for misappropriation and unfair competition are not based on the defendants' threatened use of the published Index values themselves as 'works of authorship.' Instead, their claims are based on defendants' intended use of plaintiffs' research and development used to create the Indexes, in addition to goodwill, skills, labor, reputation, and necessary expenditures." *Id.* at *5. The court expressly rejected ISE's contention that the plaintiffs' misappropriation and unfair practice claims came within the subject matter of federal copyright law. "The property interests that plaintiffs seek to protect have been recognized by the highest court of the state as state law claims, and thus do not fall within the subject matter of copyright as required by 17 U.S.C. §§ 102 and 103." *Id.* (citing *Board of Trade*, 98 Ill. 2d at 121-22). Nor were the rights the plaintiffs sought to protect of the type within the general scope of copyright. Judge Gettleman rejected the defendants' assertions that the plaintiffs' claims were based on "intended 'copying and distributing [of] factual information embodied within works such as Internet websites and newspapers.' " *Id.* Judge Gettleman found "[t]his statement [to be] a gross oversimplification of plaintiffs' claims." *Id.*

¶ 10       In light of the Northern District's remand to state court, the United States District Court for the Southern District of New York stayed the action before it, pending resolution of the action by our state court. *International Securities Exchange, LLC v. Dow Jones & Co.*, No. 06 Civ. 12878, 2007 WL 2142068 (S.D.N.Y. July 25, 2007), *aff'd*, No. 07-3324-CV, 2009 WL 46889 (2d Cir. Jan. 8, 2009). The Second Circuit Court of Appeals declined to reach the merits of the case and affirmed the stay. *International Securities Exchange*, No. 07-3324-CV, 2009 WL 46889 (2d Cir. Jan. 8, 2009).

¶ 11       Before the circuit court below, ISE once again moved to dismiss the plaintiffs' complaint on preemption grounds, which the court denied. The Illinois Supreme Court denied ISE's requests for certification of an interlocutory appeal and for a writ of prohibition. ISE and the plaintiffs then filed cross-motions for summary judgment. The plaintiffs' joint summary judgment motion on counts I and III contended the counts were controlled by *Board of Trade*, 98 Ill. 2d 109; ISE's motion for summary judgment argued that the plaintiffs' claims were preempted by federal copyright law. Alternatively, if preemption did not apply, ISE contended the action was governed by New York law, under which the misappropriation claim could not stand. However, even if Illinois law applied, ISE argued *Board of Trade* was distinguishable and did not support the plaintiffs' summary judgment motion.

¶ 12       On July 8, 2010, Judge William O. Maki issued an opinion denying ISE's motion for summary judgment and granting summary judgment to the plaintiffs on counts I and III, while dismissing count II as moot. The circuit court held plaintiffs' claims were predicated on ISE's use of the index providers' "research efforts, skills, expertise, reputation and goodwill" and that "[s]uch intangible assets are not capable of being fixed in a tangible medium and are therefore not the subject matter of copyright." It held there was no conflict

of law between Illinois and New York law that would require a choice of law analysis, as "Illinois and New York are in agreement that the Index Providers may sustain an action for misappropriation against ISE for its proposed actions." The court ruled for the plaintiffs: "Consistent with *Board of Trade*, Plaintiffs are entitled to protection of their rights in their indexes from ISE's proposed use." Noting that ISE had created an index of its own, which failed to gain acceptance to compete with the S&P 500, the court observed, "The court fails to understand how ISE's failure somehow entitles it to profit for free from the efforts, skills and reputation of the Index Providers." ISE was permanently enjoined from providing an exchange market for DJIA or S&P 500 index options, and OCC was permanently enjoined from clearing or settling ISE index options based on the DJIA or S&P 500. ISE and OCC timely appeal.

¶ 13                                              ANALYSIS

¶ 14    ISE contends the plaintiffs' claims are preempted by federal copyright law, which ISE argues permits its intended use of the DJIA and S&P 500 because the indexes are in the public domain. If we find no preemption, ISE argues New York law differs from Illinois law on misappropriation and a choice of law analysis requires that we apply the law of New York, the principal location of the defendant's conduct. ISE contends the plaintiffs' misappropriation claim would fail under New York law, and that even under Illinois law, the *Board of Trade* decision does not support the grant of summary judgment to the plaintiffs. The plaintiffs respond that this case is controlled by *Board of Trade*, that Judge Maki (consistent with the ruling by federal district court Judge Gettleman) did not err in finding ISE's claims outside the scope of copyright law, and that Judge Maki properly applied Illinois law given that both Illinois and New York law recognize the proprietary rights of the index providers in their stock indexes.

¶ 15    Though it filed no motions or briefs before the circuit court addressing the parties' cross-motions for summary judgment, OCC appeals arguing that should ISE be granted relief, OCC should be granted the same relief. In the event ISE fails to win relief, OCC contends the circuit court had no jurisdiction to include OCC in the injunctive relief, which the plaintiffs requested only against ISE; the plaintiffs sought only a declaratory judgment against OCC. The plaintiffs counter that OCC forfeited its arguments on appeal by its inaction before the circuit court; in any event, the plaintiffs argue OCC was properly included in the injunction as a court in a declaratory action has the power to issue injunctive relief.

¶ 16    The parties and the circuit court (and Judge Gettleman) all treated the plaintiffs' count I (misappropriation) and count III (unfair competition) as essentially the same. See *Board of Trade*, 98 Ill. 2d at 117 (misappropriation is "a form of unfair competition" (citing *International News Service v. Associated Press*, 248 U.S. 215 (1918))). We follow suit.

¶ 17    The plaintiffs sought a permanent injunction. "In order to be entitled to a permanent injunction, the party seeking the injunction must demonstrate: (1) a clear and ascertainable right in need of protection; (2) that he or she will suffer irreparable harm if the injunction is not granted; and (3) that there is no adequate remedy at law." *Kopchar v. City of Chicago*, 395 Ill. App. 3d 762, 772 (2009). Generally, parties that file cross-motions for summary

judgment "concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance Co. v. Caremark RX, Inc.*, 359 Ill. App. 3d 749, 755 (2005). Our standard of review of the grant of summary judgment is *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). We agree with the implicit acknowledgment of the parties that the initial question before us is whether the plaintiffs' claims are preempted by the federal copyright law, upon which the parties centered their opposing summary judgment motions.

¶ 18    Before turning to the merits, we note ISE's main brief and the plaintiffs' response brief contain 22 and 25 footnotes, respectively; many of the footnotes contain substantive arguments. "Footnotes are discouraged ***." Ill. S. Ct. R. 341(a) (eff. July 1, 2008). "Substantive arguments may not be made in footnotes ***." *Technology Solutions Co. v. Northrop Grumman Corp.*, 356 Ill. App. 3d 380, 382 (2005) (*sua sponte* striking all footnotes from the parties' briefs where the briefs contained slightly more footnotes per page than the briefs in this case). We grant the parties greater lenience than the court in *Technology Solutions*, but caution counsel that Supreme Court Rules are required to be followed.

¶ 19                                    Copyright Preemption

¶ 20    ISE contends its proposed copying and use of the index values falls within the subject matter of federal copyright law, which renders the plaintiffs' misappropriation claim the equivalent of a copyright violation claim. The plaintiffs' first response is that "the Northern District of Illinois, the Illinois Supreme Court [in *Board of Trade*], the Southern District of New York, the Court of Appeals for the Second Circuit, and the Circuit Court [of Cook County]" have rejected ISE's preemption arguments. While the rulings of the circuit court below and Judge Gettleman's decision rejected ISE's preemption argument on its merits, we are not bound to follow either ruling. The lack of preclusive effect of the circuit court's ruling is apparent on this court of intermediate review; the same is true of Judge Gettleman's opinion on the federal preemption question for reasons that are less obvious but no less sound.

¶ 21    The district court's decision to remand is not appealable (28 U.S.C. § 447(d) (2006)) and " '[c]ontemporary principles of collateral estoppel . . . strongly militat[e] against giving an [unreviewable judgment] preclusive effect.' " *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006) (quoting *Standefer v. United States*, 447 U.S. 10, 23 (1980)). "While the state court cannot review the decision to remand in an appellate way, it is perfectly free to reject the remanding court's reasoning ***." *Kircher*, 547 U.S. at 647. " 'If the state courts reject a claim of federal pre-emption, that decision may ultimately be reviewed on appeal by [the Supreme] Court.' " *Id.* at 648 (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 12 n.12 (1983)). Hence, we review the federal preemption question *de novo*.

¶ 22    We turn to the merits, mindful that "in the interest of a uniform body of precedent," we are to give " 'considerable weight' to the decisions of federal courts that have addressed preemption of laws protecting copyrightable material." *People v. Williams*, 235 Ill. 2d 178,

187 (2009) (quoting *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112, 120 (2001)). As a result of a 1976 amendment, section 301 of the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.* (2006)) provides for general federal preemption of copyright issues, but explicitly exempts from preemption certain matters:

"(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to–

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

\*\*\*

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106[.]" 17 U.S.C. § 301(b) (2006).

If either of these two prongs applies, there is no preemption.

¶ 23 The first prong looks to the subject matter of copyright under section 102 of the Act, which covers "original works of authorship fixed in any tangible medium of expression," including literary works, musical works, dramatic works, pantomimes, pictorial, graphic, and sculptural works, motion pictures, sound recordings, and architectural works. 17 U.S.C. § 102(a) (2006). "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (2006). Section 103 protects compilations and derivative works. 17 U.S.C. § 103 (2006).

¶ 24 The second prong of section 301(b) calls for a comparison of the elements of the common law claim with those of the copyright claim. "[I]f an extra element is required [by the common law claim] instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption." (Internal quotation marks omitted.) *National Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 850 (2d Cir. 1997) (quoting *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).

¶ 25 We find no difficulty in concluding the plaintiffs' claims are not premised on protecting "original works of authorship fixed in a tangible medium of expression." 17 U.S.C. § 102(a) (2006). Nor do the plaintiffs seek to preclude "reproduction, performance, distribution or display" of their indexes. See 17 U.S.C. § 301(b) (2006). It is also clear that the plaintiffs' claims are not predicated on wrongful copying. See *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 896 (2d Cir. 2011) (the Copyright Act "provides a remedy for wrongful copying"). The index providers are well aware that their indexes are freely copied and distributed globally on almost a real-time basis. It is also true, as ISE argues, that "the values once published are in the public domain and may be freely used by anyone." The circuit court's uncontested finding acknowledges this: "Plaintiffs are aware that they may assert no rights in the published index values themselves, which have been held by

courts to constitute 'a matter of basic market fact.' " (citing *New York Mercantile Exchange, Inc. v IntercontinentalExchange, Inc.*, 389 F. Supp. 2d 527, 542 (S.D.N.Y. 2005) (*NYMEX I*), *aff'd*, 497 F.3d 109 (2d Cir. 2007) (*NYMEX II*)).

¶ 26    Rather, plaintiffs' misappropriation claim is premised on ISE's unauthorized *use* of the research, expertise, reputation, and goodwill associated with the plaintiffs' product for ISE's own gain. We too find ISE's contention that the plaintiffs' claim centers on unauthorized copying or unlicensed distribution to be an oversimplification of the plaintiffs' cause of action. The plaintiffs' claim centers on ISE's unauthorized and unlicensed use of plaintiffs' ideas, systems, and concepts; accordingly, the claims do not fall under the Copyright Act and therefore are not preempted. 17 U.S.C. §§ 102(b), 301(b) (2006) (ideas, processes, systems, and concepts are outside the subject matter of copyright); *Dunlap v. G&L Holding Group Inc.*, 381 F.3d 1285, 1295 (11th Cir. 2004) ("where *** there is no work that is claimed to have been pirated–only an idea which lends itself to very few expressions–there is *** no preemption" (emphasis omitted) under section 102(b)); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (that a model's intangible likeness or persona could be fixed in a copyrightable photograph did not make that intangible asset a "work of authorship" subject to copyright law).

¶ 27    This conclusion is supported by the legislative history of the 1976 amendment, our supreme court case law, and federal case law. "The doctrine of misappropriation as a form of unfair competition was first enunciated by the Supreme Court in *International News Service v. Associated Press ***.*" *Board of Trade*, 98 Ill. 2d at 117. The United States Supreme Court upheld an injunction against International News Service, prohibiting it from copying news gathered at the expense of the Associated Press (AP) and transmitting the copied news to its members. *International News Service*, 248 U.S. at 242, 246 (finding AP would otherwise be deprived of revenues, which would adversely impact AP's incentive to gather news). The court held International News Service's activity constituted common law misappropriation of the type judicially denominated "hot news" misappropriation. *Id.* at 242. The decision, however, is "no longer *** legally authoritative because it was based on the federal courts' subsequently abandoned authority to formulate common law principles in suits arising under state law though litigated in federal court." *McKevitt v. Pallasch*, 339 F.3d 530, 534 (7th Cir. 2003). *International News Service* nonetheless retains "a ghostly presence as a description of a tort theory." *Barclays*, 650 F.3d at 894. Illinois courts have adopted the common law tort of misappropriation as first announced in *International News Service*. See, *e.g.*, *Capitol Records, Inc. v. Spies*, 130 Ill. App. 2d 429, 432 (1970).

¶ 28    While the 1976 Copyright Act amendment generally preempted state law claims that approximate copyright claims, "Congress clearly intended to preserve some form of the tort of misappropriation." *Nash v. CBS, Inc.*, 704 F. Supp. 823, 834-35 (N.D. Ill. 1989), *aff'd*, 899 F.2d 1537 (7th Cir. 1990). Indeed, " 'it is generally agreed that a "hot-news" *INS*-like claim survives preemption' " (*Barclays*, 650 F.3d at 894 (quoting *National Basketball Ass'n*, 105 F.3d at 845, citing H.R. Rep. No. 94-1476, at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748)), and misappropriation claims other than "hot news" claims have survived as well. See *Stewart Title of California, Inc. v. Fidelity National Title Co.*, 279 F. App'x 473, 476 (9th Cir. 2008) (claim for misappropriation of legal contract templates not

preempted); *National Car Rental System, Inc. v. Computer Associates International, Inc.*, 991 F.2d 426, 432-33 (8th Cir. 1993) (no copyright preemption as to unauthorized use of software); *Board of Trade*, 98 Ill. 2d 109.

¶ 29     In fact, a plain reading of the House of Representatives Report on the 1976 amendments to the Copyright Act indicates that appropriation of data updates from financial databases is a form of misappropriation that is not preempted:

"'Misappropriation' is not necessarily synonymous with copyright infringement, and thus a cause of action labeled as 'misappropriation' is not preempted if it is in fact based neither on a right within the general scope of copyright as specified by section 106 nor on a right equivalent thereto. For example, state law should have the flexibility to afford a remedy *** against a consistent pattern of unauthorized appropriation by a competitor of the facts *** constituting 'hot' news, whether in the traditional mold of *International News Service ***, or in the newer form of data updates from scientific, business, or financial data bases.*" (Emphasis added.) H.R. Rep. No. 94-1476, at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5748, *quoted in Barclays*, 650 F.3d at 894, *National Basketball Ass'n*, 105 F.3d at 850, and *Nash*, 704 F. Supp. at 834-35).

¶ 30     When Congress again amended the Copyright Act in 1990, it issued a House Report reaffirming separate causes of action for misappropriation and unfair competition. "State law causes of action such as those for misappropriation [and] unfair competition *** are not currently preempted under § 301, and they will not be preempted under the proposed law." H.R. Rep. No. 101-514, at 21 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6931; see also *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 56 n.2 (1989) (Stevens, J, dissenting, joined by Rehnquist, C.J., and Kennedy, J.) (treating a House Report as a valuable source of legislative intent). We read these legislative reports as a clear indication that Congress intended for misappropriation to avoid preemption in cases such as this one, where ISE, a direct competitor of CBOE and a competitor of the index providers by virtue of their relationship with CBOE, has appropriated information in the form of data updates from the index providers' databases.

¶ 31     This conclusion is consistent with our supreme court's holding in *Board of Trade*, by which we are bound. As we noted above, the court in *Board of Trade* upheld Dow Jones' misappropriation claim under circumstances nearly identical to this one, where a commodities exchange used the DJIA to develop futures contracts that it offered to investors without a license or authorization. *Board of Trade*, 98 Ill. 2d at 122. It is true that the *Board of Trade* decision did not address the preemption issue, though it was decided after the 1976 amendments to the Copyright Act, but its conspicuous silence on the issue necessarily means, by logical deduction, that a misappropriation claim of the type advanced by the plaintiffs is not preempted. The court would not have ruled as it did had preemption applied. Federal case law also supports the conclusion that preemption does not apply to this case.

¶ 32     In a factually similar case involving some of the same parties in this case, the Second Circuit clearly held that copyright law does not preempt misappropriation claims of the type at issue here. In *Dow Jones*, the Second Circuit addressed the claims of Dow Jones and McGraw-Hill that ISE and OCC were misappropriating their exchange-traded funds

(ETFs)–publicly traded financial products tied to the index providers' respective indexes–by offering options trading on shares of the ETFs. *Dow Jones*, 451 F.3d at 298, 306. The court concluded that "the information [in question] does not fall within the scope of federal copyright law." *Id.* at 302 n.8. Just as unlicensed options trading based on the index providers' index-based funds was outside the scope of copyright law in *Dow Jones*, so too are the unlicensed options trading based on the index values outside the scope of copyright law, as the circuit court ruled in this case.

¶ 33    An even more factually similar case, with published decisions at both the district court and court of appeals levels, is *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 538 F. Supp. 1063 (S.D.N.Y. 1982) (*Comex I*), *aff'd*, 683 F.2d 704 (2d Cir. 1982) (*Comex II*). In that case, Commodity Exchange (Comex) sought to offer stock index futures contracts[2] for trading based on the S&P 500. *Comex II*, 683 F.2d at 706. Just as in this case, the exchange sought a license from the S&P 500 provider, but the provider instead licensed its index to CME, a rival exchange. *Id.* Standard & Poor's Corp., Inc. (S&P), sued Comex under both federal copyright law and common law misappropriation as the district court's decision reveals. *Id.* at 707. The district court issued a preliminary injunction, "enjoining defendant Commodity Exchange, Inc. ('Comex') from trading any futures contract which is based upon the Standard & Poor's 500 Stock Index." *Id.* at 706. Despite the copyright claim asserted by S&P, neither court found the misappropriation claim preempted. In fact, consistent with the finding that preemption did not apply, the district court found that "Comex is misappropriating the S&P 500 Index and the skills, expenditures, labor and reputation of S&P in generating and producing the S&P 500 Index, for Comex's own advantage and profit by creating a futures contract based on the S&P 500 Index." *Comex I*, 538 F. Supp. at 1071. "In promoting its index, Comex deliberately sought to capitalize on the extraordinary reputation and goodwill of S&P in the financial community." *Id.* at 1070. The Second Circuit Court of Appeals affirmed. *Comex II*, 683 F.2d at 712.

¶ 34    The decisions in *Comex I* and *II* offer clear support for the circuit court's decision in the case at bar. In each case, an exchange sought permission to use S&P 500 for index trading. In each case, the exchange sought to use the index after its request for permissive use was rejected. As the federal district court in *Comex I* made clear, the focus of the lawsuit by S&P 500 was not on the copying of index values by the exchanges–even though the index provider brought a claim for copyright violation–but on "the skills, expenditures, labor and reputation of S&P in generating and producing the S&P 500 Index, for Comex's own advantage and profit by creating a futures contract based on the S&P 500 Index." *Comex I*, 538 F. Supp. at 1070-71. Nearly identical assets are at the crux of the plaintiffs' misappropriation claim before this court. Based on clear authority, that claim is not preempted by copyright law. *Comex II*, 683 F.2d at 712.

---

[1]The only difference between a futures contract and an options contract is that a futures contract imposes an obligation at a future date, whereas an option affords merely an option to exercise the contract, as the name implies. See *Comex II*, 683 F.2d at 707; *Dow Jones*, 451 F.3d at 298.

¶ 35     ISE discredits *Comex I* based on its observation that the Second Circuit did not address the merits of the misappropriation claim on appeal. Its criticism is off base. While the majority refrained from discussing the case's merits, its summation of the outstanding issues focused entirely on misappropriation. *Comex II*, 683 F.2d at 712. It made no mention of copyright or even the possibility that S&P's claim might be preempted, despite the clear opportunity to do so given the copyright claim in the lawsuit. *Id.* In furtherance of its efforts to discredit *Comex I*, ISE misleadingly asserts *Dow Jones* found *Comex I* "had no precedential value." In actuality *Dow Jones* only stated that "*Comex I* is not a precedent *that substantially favors plaintiffs* because the facts of that case are significantly different than those before us." (Emphasis added.) *Dow Jones*, 451 F.3d at 306 (finding no misappropriation because, unlike in *Board of Trade*, Dow Jones had "licensed the creation of ETFs and the sale of their shares to the public, and ISE [was] simply creating a mechanism for trading in those shares"). Far from calling into question its decision, *Dow Jones* fully discussed the facts of *Comex I* in order to distinguish *Comex I* from the case before it. *Id. Comex I* remains good law, as affirmed by the Second Circuit in *Comex II*, and offers guidance against a finding of preemption in this case.

¶ 36     Despite the compelling authority of *Board of Trade*, *Dow Jones,* and *Comex*, ISE relies on a factually dissimilar case to argue the proposition that, because the index values themselves are arguably copyrightable, this means the plaintiffs' claim contains copyrightable elements, from which ISE contends the plaintiffs' claim must be treated as a copyright claim in its entirety. *National Basketball Ass'n*, 105 F.3d at 849, 854 (finding preemption of the NBA's misappropriation claim against Motorola for copying and distributing NBA scores via a consumer paging device without the NBA's permission). ISE once again oversimplifies. See *Toney*, 406 F.3d at 910 (that an item in a certain form is copyrightable does not *ipso facto* mean that the depiction of the item is a "work of authorship" that is subject to copyright law). Even if we were to ignore the holding in *Toney* that the presence of copyrightable elements does not necessarily preempt a state law claim, ISE's contention is still unavailing. As the *National Basketball Ass'n* court noted, there is no preemption if a cause of action complains of something other than "acts of reproduction, performance, *distribution* or display." (Emphasis added.) (Internal quotation marks omitted.) *National Basketball Ass'n*, 105 F.3d at 850. In that case and the other cases relied on by ISE, the gravamen of the plaintiffs' claims was the unauthorized *copying* or the act of *distributing* the plaintiffs' information, which brought the claims within the scope of the Copyright Act. *National Basketball Ass'n*, 105 F.3d at 843-44 (the so-called "current mode" of Motorola's paging device *copied and distributed* information on NBA games in progress, and "[i]t is the 'current mode' that gives rise to the present dispute"); see also *Barclays*, 650 F.3d at 880 (finding preemption of Barclays' misappropriation claim against a Web site for unauthorized *copying and distributing* of Barclays' written investment reports, where Barclays, unlike the index providers here, had "increasingly taken measures to seek to prevent *** public dissemination" of its product); *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 599 (S.D.N.Y. 2010) (plaintiff index provider alleged that defendant "Capital One breached the [parties'] License Agreement by *redistributing* the *** Indices to [defendant] Costco" (emphasis added)); *Centrifugal Force, Inc. v. Softnet Communication, Inc.*, 08 Civ. 5463,

2011 WL 744732, at *9-10 (S.D.N.Y. Mar. 1, 2011) (software developer's misappropriation was based on defendant's *copying* its software and *selling* it to customers under a different name).

¶ 37      In contrast, the instant case, *Board of Trade*, *Dow Jones*, and *Comex* are all predicated on the unauthorized *use* of the providers' expertise and goodwill as the index providers consent to the copying and the distributing of the indexes. The instant plaintiffs' claims are more akin to those involving the United States Golf Association (USGA):

> "What USGA sought, and what the trial court ordered, was an injunction preventing [the defendant software company] from *using* the USGA Formulas or misappropriating them as [the defendant's] own. USGA's common law misappropriation claim did not seek to bar [the defendant] from simply copying the Formulas. 'Use' and 'appropriation' are not among the 'exclusive rights' granted copyright owners under the Act. Copying is an exclusive right protected under the Act; use is not." (Emphasis in original.) *United States Golf Ass'n v. Arroyo Software Corp.*, 81 Cal. Rptr. 2d 708, 717 (Cal. Ct. App. 1999) (citing 17 U.S.C. § 106 (1996), and *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 904-05 (9th Cir. 1992)).

¶ 38      We also agree with the Second Circuit that *Dow Jones* is distinguishable from ISE's principal case of *National Basketball Ass'n*: "While defendants argue that [*National Basketball Ass'n*] severely limits the scope of a misappropriation claim under New York law, [*National Basketball Ass'n*] did not purport to address the scope of a misappropriation claim where, as here, the information does not fall within the scope of copyright law." *Dow Jones*, 451 F.3d at 302 n.8. The fundamental flaw in ISE's argument is its reliance on cases involving claims under the federal copyright law when, as the circuit court ruled below, the plaintiff's misappropriation claim falls outside the scope of copyright law, a ruling with which we agree.

¶ 39      ISE assets the case involving the New York Mercantile Exchange (*NYMEX I and II*), which it calls "the most pertinent precedent of all," stands for the proposition "that the Copyright Act allows an exchange to copy published settlement values and use them to offer a derivative product for trading, even if the plaintiff claims that the values are the product of its 'creativitiy' and 'judgment,' and that the defendant is free-riding on the plaintiff's 'reputation and goodwill.' " In that case, Intercontinental Exchange (ICE) attempted to use, for its own commodity futures trading, settlement prices derived from trading at and calculations by NYMEX. *NYMEX II*, 497 F.3d at 110-12. NYMEX brought claims "alleging copyright infringement, trademark infringement under federal and state law, and a state law claim of tortious interference with contract," but did not advance a misappropriation claim. *Id.* at 112. With no misappropriation claim pending, ICE did not raise a preemption defense. The ruling by the Second Circuit was straightforward: "ICE 'took nothing more than ideas, for which the copyright law affords no protection to the author.' " *NYMEX II*, 497 F.3d at 118 (quoting *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.*, 44 F.3d 61, 68 (2d Cir. 1994) (finding no infringement)). Thus, *NYMEX* is inapposite factually. The case did not address preemption in general or preemption as it relates to a misappropriation claim specifically. Neither "preemption" nor "misappropriation" is mentioned in either the district court's decision or the opinion of the court of appeals.

*NYMEX II* is exclusively a claim for copyright protection of NYMEX's settlement prices. That NYMEX's claim for copyright protection of its financial data was unsuccessful does not support the proposition that a misappropriation claim for protection of that data would have been preempted. If anything, *NYMEX* could be read as supporting the opposite conclusion.

¶ 40    We reiterate that under section 301(b)(1) of the Copyright Act, "subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103" is saved from preemption. 17 U.S.C. § 301(b)(1) (2006). The court in *NYMEX* emphasized that under section 102 of the Copyright Act, " 'copyright protection does not extend to ideas; it protects only the means of expression employed by the author.' " *NYMEX II*, 497 F.3d at 116 (quoting *CCC*, 44 F.3d at 68, citing 17 U.S.C. § 102(b) (2006)). The court held the plaintiffs' settlement prices were not entitled to protection under section 102 because, as in this case, "enforcing the copyright here would effectively accord protection to the idea itself." *NYMEX II*, 497 F.3d at 110. Because no claim for misappropriation was advanced in *NYMEX*, the case does not support ISE's argument that a common law claim of misappropriation of financial data by an exchange is preempted by copyright law. We also note that the court in *NYMEX* declined to exercise supplemental jurisdiction over the state claims that did not fall within the federal copyright law, which the court "dismissed without prejudice." *NYMEX I*, 389 F. Supp. 2d at 547 ("It is particularly appropriate to decline supplemental jurisdiction over the remaining state law claims because they raise issues of fact that are unnecessary to resolve for purposes of deciding the federal claims."), *aff'd*, 497 F.3d at 118-19. The practical effect of the decision not to exercise supplemental jurisdiction was akin to the order of Judge Gettleman in this case: the state law claims were deemed outside the scope of federal law, they were not preempted, and they were best resolved in state court. We conclude that the outcome of the state claims in *NYMEX* is contrary to the position ISE urges before us. *NYMEX* does not favor a finding of preemption.

¶ 41    ISE complains that the circuit court failed to address the cautionary language in *Nash v. CBS*, that allowing a plaintiff to "challenge the use of his copyrighted material under both federal copyright law and the state law tort of misappropriation" "would emasculate § 301." *Nash*, 704 F. Supp. at 835 (plaintiff author's claim that television network misappropriated his work was preempted by copyright law). It is true that in *Nash*, the federal district court was "inclined to hold that § 301 always preempts the tort of misappropriation." *Id.* at 834. Nonetheless, the court observed that "Congress clearly intended to preserve some form of the tort of misappropriation." *Id.* The court held "that all misappropriation claims, *except those similar to the examples cited in the House Report*, are preempted." (Emphasis added.) *Id.* at 835. One example cited in the House Report, which we quoted above, fits precisely within the facts of this case: " '[S]tate law should have the flexibility to afford a remedy *** against a consistent pattern of unauthorized appropriation by a competitor of the facts *** in the newer form of data updates from *** *financial data bases*.' " (Emphasis added.) *Nash*, 704 F. Supp. at 834 (quoting H.R. Rep. No. 94-1476, at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5748). Contrary to the complaints of ISE, a fair reading of *Nash* does not support a finding of preemption here, which we conclude explains the decision of the circuit court not to address the *Nash* language quoted by ISE.

¶ 42                                   Choice of Law

¶ 43    ISE next contends there is an outcome-determinative conflict regarding misappropriation between Illinois and New York law. Based on its home forum of New York, ISE contends choice of law analysis mandates that we apply New York law.

¶ 44    It is undisputed that a "choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). "In the absence of a conflict, Illinois law applies as the law of the forum." *SBC Holdings, Inc. v. Travelers Casualty & Surety Co.*, 374 Ill. App. 3d 1, 13 (2007). ISE bears the burden of demonstrating a conflict of law exists. *Gleim v. Roberts*, 395 Ill. App. 3d 638, 643 (2009) ("As the parties seeking a choice-of-law declaration, it was the defendants' burden to present evidence establishing that such a declaration was necessary."); *Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442, 447 (2002). "Because these issues 'involve the selection, interpretation, and application of legal precepts,' review is *de novo*." *Townsend*, 227 Ill. 2d at 154 (quoting *Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir. 1986)).

¶ 45    Illinois courts have recognized that New York misappropriation law is the source from which Illinois misappropriation law arose. See *Board of Trade v. Dow Jones & Co.*, 108 Ill. App. 3d 681, 690 (1982) ("any discussion of the doctrine [of misappropriation] must make repeated reference to the law of other jurisdictions, particularly New York, where the doctrine has been most fully delineated"), *aff'd*, 198 Ill. 2d 109 (1983); *Board of Trade*, 98 Ill. 2d at 116 (citing New York case law: *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 101 N.Y.S.2d 483 (N.Y. Sup. Ct. 1950), *aff'd*, 107 N.Y.S.2d 795 (N.Y. App. Div. 1951)). Indeed, ISE in its motion to dismiss filed before the circuit court asserted that "the elements of a misappropriation claim are the same in Illinois and New York." Compare *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 500 (S.D.N.Y. 2002) ("The central principle underlying a claim for unfair competition under New York law is that one may not misappropriate the results of the labor, skill, and expenditures of another."), with *Board of Trade*, 98 Ill. 2d at 119 (underlying the policy of misappropriation is "that protection should be afforded one who expends labor and money to develop products").

¶ 46    For purposes of its conflict of law argument, ISE begins from the premise that its use of the indexes would be an impermissible misappropriation under Illinois law in light of *Board of Trade*. While ISE contends the same would not be true under New York law, it fails to carry its burden to compel such a declaration. *Gleim*, 395 Ill. App. 3d at 643. We find no distinction between *Comex*, applying New York law, and *Board of Trade*, applying Illinois law, on the law of misappropriation. See *Dow Jones*, 451 F.3d at 306 ("Like *Comex*, *Board of Trade* involved a defendant's attempt to create index futures that would allow investors to speculate directly on the value of an index copied from the DJIA."). Just as our supreme court found in favor of Dow Jones in *Board of Trade*, the *Comex* court concluded that "Comex is misappropriating the S&P 500 Index and the skills, expenditures, labor and reputation of S&P in generating and producing the S&P 500 Index, for Comex's own advantage and profit by creating a futures contract based on the S&P 500 Index." *Comex I*,

-14-

538 F. Supp. at 1071.

¶ 47 To avoid this holding, ISE resurrects its claim that *Comex I* is a legal nullity. We reaffirm our rejection of that claim: *Comex I* was affirmed by *Comex II*. No court has held that *Comex I* is not good law. If the Second Circuit wished to declare *Comex I* a legal nullity, it had the opportunity in *Dow Jones* to do so, but it issued no such proclamation. The trial court in *Dow Jones* observed, "It is unclear that the Court in *Comex* would have reached the same decision today," as the Second Circuit's opinion in *Comex II* "suggests *** that an index's property rights may not extend to every product that happens to use the index only as a reference point." *McGraw-Hill Cos. v. International Securities Exchange, Inc.*, No. 05 Civ. 1129, 2005 WL 2100518, at *3-4 (S.D.N.Y. Sept. 1, 2005), *aff'd*, *Dow Jones*, 451 F.3d 295. On appeal, rather than echo the trial court's uncertainty about *Comex I* or take it a step further and reject its holding, the Second Circuit discussed the merits of *Comex I* in order to distinguish its facts from the case before it. *Dow Jones*, 451 F.3d at 306 (finding no misappropriation under the distinct circumstance where Dow Jones had ceded the right to preclude trading on its ETFs by selling them to the public). This constituted an implicit acknowledgment by the Second Circuit that *Comex I* remains good law.

¶ 48 Based on our reading of *Comex*, there is no outcome-determinative conflict of law regarding misappropriation between Illinois and New York law. Accordingly, Illinois law applies.

¶ 49 Misappropriation Under Illinois Law

¶ 50 Finally, ISE contends that even if Illinois law applies, summary judgment was not proper because material questions of fact remain. Its argument against the propriety of summary judgment essentially contradicts its claims before the circuit court, where ISE filed a summary judgment motion of its own, arguing that the case "can be decided as a matter of law." As noted above, parties filing cross-motions for summary judgment "concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast*, 359 Ill. App. 3d at 755. As both sides contended below that no disputed facts remain, we will not entertain ISE's belated claim to the contrary. *Bohne v. La Salle National Bank*, 399 Ill. App. 3d 485, 494 (2010) ("[D]efendants have forfeited any claim that the trial court erred *** because defendants failed to object in the trial court ***."); *Clifford v. Wharton Business Group, L.L.C.*, 353 Ill. App. 3d 34, 43 n.4 (2004) (plaintiffs' "argument, *** not raised in the trial court in plaintiffs' response to the motion for summary judgment," is forfeited (citing *Ray v. City of Chicago*, 19 Ill. 2d 593 (1960) (matters not raised or presented in the trial court cannot be argued for the first time in a reviewing court))). In any event, our review of the record discloses no dispute as to the material facts; the dispute between the parties centers on the legal effect of settled facts.

¶ 51 Nor are we persuaded by ISE's attempts to distinguish *Board of Trade* to avoid its holding as binding precedent. There, as here, an exchange sought to use a major index listing as a basis for a derivative contract without permission. *Board of Trade*, 98 Ill. 2d at 110-11. We fully agree with the circuit court that there is no material difference between the facts of this case and those of *Board of Trade*. We agree that one nonmaterial difference in the

supreme court's case actually favors the plaintiffs. Unlike the case at bar, the DJIA in *Board of Trade* had not been licensed to another exchange for the creation of financial products based thereupon, and there is no indication that Dow Jones had intentions of pursuing such a license at that time. Had the index providers demonstrated the ability to monetize the use of their indexes for options trading, as they can do now given their licenses with CBOE, the *Board of Trade* court would likely have been all the *more* likely to protect the providers' interest in the indexes.

¶ 52 The reasoning underlying the supreme court's decision in *Board of Trade* remains viable. "We conclude that the possibility of any detriment to the public which might result from our holding that defendant's indexes and averages may not be used without its consent in the manner proposed by plaintiff are outweighed by the resultant encouragement to develop new indexes specifically designed for the purpose of hedging against the 'systematic' risk present in the stock market." *Id.* at 121. The court affirmed the appellate court's holding that the Board of Trade's use of the index for its own financial products constituted misappropriation. *Id.* at 123. In the decades since the decision, our supreme court has not questioned its holding in *Board of Trade*, and, as an intermediate court of review, we are bound by that holding. *Reliable Fire Equipment Co. v. Arredondo*, 405 Ill. App. 3d 708, 722 (2010) ("[W]e are bound to follow decisions of the Illinois Supreme Court.").

¶ 53 The court in *Board of Trade* was prescient in stating its holding would encourage new indexes. ISE does not deny that dozens of new competitors have since entered the index marketplace and tens of thousands of new indexes have been created. In fact, the circuit court aptly pointed out that "ISE unabashedly admits that it attempted to create a competitive [index] product" of its own, which was ultimately unsuccessful. We share the circuit court's puzzlement at "how ISE's failure somehow entitles it to profit for free from the efforts, skills, and reputation of the Index Providers."

¶ 54 To be sure, ISE is not without compelling economic arguments on its side. There is evidence that CBOE's grip on the index options trading market is monopolistic. The index providers have not extended index options trading licenses to any exchange other than CBOE, and ISE points out there is evidence that the DJIA and S&P 500 have "become entrenched in the public mind as the sole acceptable measures of the overall U.S. stock market." CBOE handles over 90% of all United States index options by volume. The SEC has concluded that "one of the more palpable results of enhanced competition in the options markets is the narrowing of [bid-ask] spreads," which "can provide better prices for investors." According to ISE's expert, the Index Providers' restriction of their indexes to CBOE alone costs investors between $2 billion and $9.7 billion annually. The argument that competition and price are inversely correlated in this respect is supported by the uncontested fact that CBOE's ETF trading fees were reduced after the court in *Dow Jones* denied Dow Jones the right to exclusively license ETF trading.

¶ 55 In addition, some case law and commentaries have viewed with disfavor the *Board of Trade* decision and the tort of misappropriation itself. See *McKevitt*, 339 F.3d at 534-35 (noting that "[r]ecent cases, *** in recognition of the nebulousness of misappropriation doctrine, place tight limitations on it," and stating "that legal protection for the gathering of facts is available only when unauthorized copying of the facts gathered is likely to deter the

plaintiff, or others similarly situated, from gathering and disseminating those facts"); *United States Golf Ass'n v. St. Andrews Systems, Data-Max, Inc.*, 749 F.2d 1028, 1039 n.17 (3d Cir. 1984) (labeling as "speculative" our supreme court's reliance on the likelihood that protecting the DJIA from unauthorized use would encourage new index options, and declining to engage in such "speculative inquiry"); Richard A. Posner, *Misappropriation*: *A Dirge*, 40 Hous. L. Rev. 621, 629 (2003) (*Board of Trade* is "unsound"; permitting unlicensed use of the indexes was "unlikely to kill the goose that lays the golden eggs because [the Board of Trade] was free riding on a merely potential derivative work unlikely to generate essential income for the owner of the primary work"); Restatement (Third) of Unfair Competition § 38 cmt. c (1995) ("Only rarely have courts applied the doctrine [of misappropriation] to appropriations of intangible trade values for use in secondary or derivative markets."). Our supreme court is equipped to address these concerns should it be disposed to review this decision. Our own inquiry need advance no further. We are bound by *Board of Trade*; we hold ISE's proposed actions constitute misappropriation in Illinois under that decision.

¶ 56                                OCC's Appeal

¶ 57    OCC appeals to ensure that if the injunction against ISE is lifted, the injunction against OCC is lifted as well. OCC contends separately that the circuit court had no jurisdiction to impose an injunction against it where the plaintiffs sought only a declaratory judgment against it. OCC acknowledges it did not participate in the cross-motions for summary judgment before the circuit court. Nor does OCC provide any support for its contention that the circuit court had no jurisdiction to enter an injunction while not challenging the court's jurisdiction to enter a declaratory judgment against it. At best, OCC's claim of "no jurisdiction" amounts to a claim of trial court error, which we decline to address because OCC took no stance before the circuit court regarding the cross-motions for summary judgment; OCC is "not entitled to relief for any possible error caused by its own failure to act." *Siwek v. White*, 388 Ill. App. 3d 152, 158 (2009).

¶ 58    While we decline to reach the merits of the injunction against OCC, we note our agreement with the authority relied upon by the plaintiffs to uphold the injunction against OCC. "[I]n exercising its discretion to choose an appropriate remedy in a declaratory judgment action, the trial court may grant consequential relief and the court should grant the relief that is necessary and proper for the determination of the controversy before it." *Mayfair Construction Co. v. Waveland Associates Phase I Ltd. Partnership*, 249 Ill. App. 3d 188, 205 (1993).

¶ 59                                CONCLUSION

¶ 60    The plaintiffs' claims, which are based on the unauthorized use of their skills, expertise, and goodwill in the creation of certain indexes, are not claims that fall within the scope of the federal copyright law. Because there is no conflict between New York and Illinois law on the issue of misappropriation, Illinois law applies. Under the existing law of this state, as dictated by the clear mandate of *Board of Trade*, the plaintiffs are entitled to injunctive relief

under counts I and III of their complaint.

¶ 61  Affirmed.